Filed 7/29/26  Tripathi v. Tesconi CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ASHISH TRIPATHI,<br><br>        Plaintiff and Respondent,<br>v.<br><br>RAYMOND TESCONI,<br><br>        Defendant and Appellant. | A172456<br><br>(Alameda County<br>Super. Ct. No. 24CV078303) |

Defendant Raymond Tesconi appeals from the trial court's order granting plaintiff Ashish Tripathi's unopposed motion for summary judgment.  Tesconi argues the shortened briefing schedule prevented him from opposing the motion, and Tripathi failed to establish the required elements for his unlawful detainer claim.  Tesconi further contends the court erred in denying his motion for a stay of the dispute while his wrongful foreclosure civil action was proceeding.  We are not persuaded and affirm.

## BACKGROUND

Tesconi owned and resided at the subject property for nearly 30 years. He financed the property through two loans: a primary loan held by Wells Fargo Bank, N.A.; and a junior loan (a loan that sits behind a primary loan in repayment priority) held by Dark Run Ventures, Inc. (DRV).  In 2018, Tesconi recorded the deed of trust securing DRV's junior loan (loan).  Only that loan is at issue in this appeal.

1

In January 2023, approximately three months before the loan matured, Mortgage Lender Services, Inc. (MLS), acting as trustee under the deed of trust, initiated nonjudicial foreclosure based on failure to pay the mortgage by recording a notice of default election to sell under deed of trust. Tesconi disputed the default and asserted he had financing available to satisfy the loan, but the foreclosure proceeded.

MLS later recorded a notice of trustee's sale. Following several postponements, the trustee's sale occurred on April 2, 2024. Tripathi attended the sale and successfully submitted the highest bid, and the foreclosure sale was subsequently deemed final pursuant to Civil Code section 2924m, subdivision (c)(4) (all further statutory references are to the Civil Code unless otherwise noted). All further dates are in 2024.

*Wrongful Foreclosure Action*

On April 16, Tesconi filed a wrongful foreclosure complaint against DRV, its owner, and MLS, alleging causes of action for wrongful foreclosure, quiet title, misrepresentation, constructive fraud, financial elder abuse, conversion, monies had and received, breach of fiduciary duty, intentional infliction of emotional distress, and declaratory relief. The complaint principally challenged DRV's conduct leading up to the foreclosure. Among other things, Tesconi alleged that while he was undergoing cancer treatment, DRV required him to execute a settlement document, improperly advanced funds on the primary loan, charged unauthorized interest, refused to provide an accurate payoff demand, and otherwise prevented him from paying off the junior loan. As to the foreclosure sale itself, the complaint alleged only that defendants refused to postpone the sale and that the property may have been sold to insiders because the purchase price was below market value.

2

On May 10, Tesconi recorded a notice of pendency of action (lis pendens) concerning the property. The notice stated that Tesconi filed an action against DRV, its owner, and MLS that "alleges a real property claim affecting" the subject property. On June 7, Tesconi filed a Doe amendment to his wrongful foreclosure action, adding Tripathi as a defendant.

*Unlawful Detainer Action*

On May 22, MLS confirmed the trustee's sale to Tripathi had become final. MLS provided Tripathi an executed "Trustee's Deed Upon Sale," which he recorded on May 24.

Tripathi thereafter served Tesconi with notices to quit. Although the record reflects an initial notice served on May 24, Tripathi served a second three-day notice to quit on May 30. Tesconi did not leave.

Tripathi filed an unlawful detainer action on June 4. The complaint alleged that Tesconi refused to surrender possession even though Tripathi had acquired the property through a "properly noticed and conducted non-judicial foreclosure sale," perfected title by recording the Trustee's Deed Upon Sale, and served Tesconi with a three-day notice to quit. Tesconi's answer alleged various affirmative defenses, including that the sale was subject to recissions and the Trustee's Deed Upon Sale voidable because "the lender, prior to foreclosure, violated salient portions of the Homeowners' Bill of Rights."

*Motion To Stay*

Tesconi moved to stay the unlawful detainer action pending resolution of the wrongful foreclosure case. He argued the separate action presented title issues that could not fairly be resolved within the summary unlawful detainer proceeding. In a supporting declaration, Tesconi asserted he had attempted to repay the loan, that DRV pursued foreclosure while he was

3

recovering from a stroke, and that Tripathi acted as a straw purchaser in a scheme to acquire the property below market value. In opposition, Tripathi argued the wrongful foreclosure action challenged only DRV's preforeclosure conduct and did not raise issues concerning the statutory validity of the trustee's sale and compliance with section 2924.

The trial court denied the motion. It reasoned that a stay is not warranted merely because a defendant challenges title in a separate action, as such a rule would effectively halt most postforeclosure unlawful detainer proceedings. The court noted Tesconi cited no authority requiring or even supporting a stay under these circumstances, and the authorities he relied upon were distinguishable. The court emphasized Tesconi did not directly challenge the postforeclosure trustee's sale procedures (i.e., the trustee's sale failed to comply with section 2924 et seq.) but instead alleged that the lender's preforeclosure violations of the Homeowner Bill of Rights rendered the sale voidable. Because plaintiff's verified complaint alleged compliance with the statutory foreclosure scheme and the attached Trustee's Deed Upon Sale reflected a facially valid trustee's sale, the court found no basis to stay the unlawful detainer proceedings.

Tesconi filed a petition for writ of mandate challenging this order with the appellate division of the superior court, which was summarily denied.

*Motion for Summary Judgment*

On November 27, Tripathi moved for summary judgment. The motion alleged there was prima facie evidence that the foreclosure sale was conducted in compliance with section 2924 as Tripathi purchased the property at a trustee's sale and was subsequently issued a Trustee's Deed Upon Sale, which contained recitals stating the foreclosure proceedings were conducted in accordance with applicable law. It further asserted he was a

4

bona fide purchaser and thus took title free of any issues between Tesconi and MLS or DRV. Finally, it asserted Tripathi properly served Tesconi with a notice to quit, Tesconi was not challenging the adequacy of that notice, and Tesconi failed to vacate the property.

Tripathi submitted a supporting declaration, stating he attended the trustee's sale, submitted the highest bid at that sale, and was declared the winning bidder. He declared that, at the time he attended the trustee's sale and purchased the property, he was unaware of any dispute regarding the property or the foreclosure proceedings. Tripathi further stated he served Tesconi with two separate notices to quit but was required to file the unlawful detainer action as those notices were ignored.

On December 2, Tripathi moved ex parte to advance the original February 6, 2025 hearing date on the motion for summary judgment as the hearing date provided by the court was almost two months *after* the scheduled December 16, 2024 trial date, and he had been unable to file the motion sooner due to Tesconi's discovery delays. Tripathi provided Tesconi's counsel with the requisite notice of the ex parte and asked to be informed if Tesconi would oppose the application. On December 3, the court granted Tripathi's ex parte application and moved the hearing date for the summary judgment motion to December 12. The court set December 9 as the deadline for any opposition, and December 10 as the deadline for any reply.

On December 10, the trial court issued a tentative order granting the motion for summary judgment and noting Tesconi "has not opposed this motion and has therefore failed to raise triable issues of material fact as to the unlawful detainer action." The court provided its form instructions on how to contest the tentative ruling. Because Tesconi did not contest the tentative ruling, the court subsequently adopted its tentative and granted the

motion for summary judgment. The court entered judgment in favor of Tripathi and ordered issuance of a writ of possession.

Tesconi filed an ex parte motion to stay eviction and enforcement, which Tripathi opposed as an improper request for reconsideration. The court conditionally granted the request, providing Tesconi with approximately 20 days to vacate subject to a rental payment.

Tesconi appealed the judgment.

## DISCUSSION

On appeal, Tesconi challenges both the trial court's summary judgment ruling and its earlier order denying his request for a stay. We address both orders in turn.

## I. Applicable Law and Standard of Review

### A. Summary Judgment

The standard of review of an order granting summary judgment is well established. On appeal, "we apply the same three-step process as the trial court." (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) First, we review the issues framed by the operative pleadings to determine the scope of material issues. Second, we then determine if the moving party has discharged its initial movant's burden of production. Finally, if we determine the moving party made the requisite prima facie showing of the nonexistence of a triable issue of fact, we review the opposing party's submissions to determine if a material triable issue exists. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.)

Our review is de novo. (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334.) In conducting this review, "we must view the evidence in a light favorable to [the losing party] [citation], liberally construing [his or] her

evidentiary submission while strictly scrutinizing [the other party's] own showing, and resolving any evidentiary doubts or ambiguities in [the losing party's] favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

### B. Motion To Stay

We review a trial court's ruling on a motion for a stay under the abuse of discretion standard. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 480.) "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice." (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.)

## II. Summary Judgment Ruling

### A. Mootness

As a threshold matter, Tripathi contends the appeal is moot because he has already obtained possession of the property. We disagree.

" 'Generally, courts decide only "actual controversies" which will result in a judgment that offers relief to the parties.' [Citation.] 'Thus, appellate courts as a rule will not render opinions on moot questions . . . .' [Citation.] 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' [Citation.] . . . But, where a court can afford the party at least some relief, even if not all the relief originally requested, the court should not dismiss a case as moot." (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1031.)

Tripathi focuses only on the relief he sought below—possession of the property—and overlooks the issue presented on appeal: whether Tesconi was

7

wrongly dispossessed.  If Tesconi were to prevail, this court could reverse or modify the judgment and order restitution "on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order." (Code Civ. Proc., § 908; see *Shapell SoCal Rental Properties, LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 209–210.)  Because effective relief remains available, the appeal is not moot.

**B. Waiver**

Although the appeal is not moot, Tesconi has forfeited the bulk of his challenge to the summary judgment ruling by failing to oppose the motion or otherwise raise his arguments in the trial court.

Generally, "a defendant may waive the right to raise an issue on appeal by failing to raise the issue in the pleadings or in opposition to a summary judgment motion."  (*Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1011.)  Here, Tesconi filed no opposition to Tripathi's motion, submitted no separate statement, and offered no evidence disputing Tripathi's title evidence or otherwise demonstrating the existence of a triable issue of material fact.  His failure to file a separate statement alone deprived the trial court of the procedural mechanism for identifying disputed facts and, in the court's discretion, constituted sufficient grounds to grant summary judgment.  (Code Civ. Proc., § 437c, subd. (b); *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22; *Kaplan v. LaBarbera* (1997) 58 Cal.App.4th 175, 179.)  Code of Civil Procedure section 437c, subdivision (c), requires a trial court to grant summary judgment when the papers before the trial court, together with all reasonable inferences, show no triable issues of material fact and entitlement to judgment as a matter of law. (*Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511–1512.)

Nor may Tesconi cure those omissions on appeal. Appellate review is confined to the evidence and theories properly presented below. "[U]nless they were factually presented, fully developed and argued to the trial court, potential theories which could theoretically create 'triable issues of material fact' may not be raised or considered on appeal." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) Like the trial court, on appeal we consider only the evidence properly identified in the summary judgment papers, excluding evidence to which objections were sustained. (Code Civ. Proc., § 437c, subd. (c); *Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 561, fn. 2.) And because Tesconi raised no evidentiary objections below, any such objections are forfeited. (Code Civ. Proc., § 437c, subd. (d).)

In response to this failure to oppose summary judgment, Tesconi takes issue with the court's ex parte order setting an abbreviated briefing schedule and advancing the hearing date. But Tesconi likewise forfeited any challenge to the ex parte order by failing to oppose the ex parte application, object to the modified briefing schedule, argue that the shortened schedule deprived him of a meaningful opportunity to respond, or request a continuance. Had Tesconi believed the shortened notice period prevented him from preparing an adequate opposition, he was required to make a record by objecting or seeking additional time. (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 698.)

Likewise, Tesconi cannot now claim on appeal that the shortened schedule deprived him of due process. A party generally must raise constitutional claims in the trial court to preserve them for appellate review. (*Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090, 1101 ["Typically, constitutional issues not raised in earlier civil

9

proceedings are waived on appeal."].)  Because he failed to raise this issue in the trial court, he has failed to preserve it for appellate review.

Even overlooking this forfeiture, Tesconi's due process argument fails on the merits.  " 'It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend.  [Citation.]' . . . Due process requires affording a litigant a reasonable opportunity, by continuance or otherwise, to respond to evidence or argument that is new, surprising, and relevant." (*In re Marriage of O'Connell* (1992) 8 Cal.App.4th 565, 574.)  Whether Tesconi was deprived of due process is a question of law that we review de novo.  (*In re Marriage of Siegel* (2015) 239 Cal.App.4th 944, 953.)  Here, the record demonstrates Tesconi received notice of the summary judgment motion, the order advancing the hearing date, and the revised briefing schedule.  Despite that notice, he failed to file any opposition, requested no continuance, and lodged no objection to the modified schedule or the trial court's tentative ruling.  In short, Tesconi was afforded notice and an opportunity to be heard but opted to ignore the motion.  His decision not to avail himself of any of these options does not establish a denial of due process.

## C.  Tripathi Met His Burden of Proof

Because we review an order granting summary judgment de novo, we independently determine whether Tripathi's undisputed evidence established each element of his unlawful detainer claim and entitled him to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (p)(1).)

To prevail on an unlawful detainer action under Code of Civil Procedure section 1161a, subdivision (b)(3), Tripathi was required to establish: (1) he acquired the property through a foreclosure sale conducted in accordance with Civil Code section 2924; (2) title under the sale was duly

perfected; (3) he served Tesconi with a valid three-day notice to quit; and (4) Tesconi remained in possession of the property after expiration of the notice period.  We address each element in turn.

### 1.  The Trustee's Sale

Tripathi first had to establish that he acquired the property at a regularly conducted trustee's sale under section 2924.  (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1250 (*Melendrez*).)  " 'As a general rule, there is a common law rebuttable presumption that a foreclosure sale has been conducted regularly and fairly.'  [Citations.] Accordingly, '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale.' " (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1284, italics omitted.)

Section 2924, subdivision (c), provides that the recitals in a trustee's deed constitute prima facie evidence—and, as to a bona fide purchaser, conclusive evidence—that the statutory foreclosure requirements were satisfied.  Thus, when a trustee's deed recites compliance with the statutory notice requirements, a presumption arises that the foreclosure sale was regularly and properly conducted.  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.)  That presumption "is conclusive as to a bona fide purchaser." (*Ibid.*)  Under section 2924, a bona fide purchaser is one who "(1) purchase[d] the property in good faith for value, and (2) [has] no knowledge or notice of the asserted rights of another." (*Melendrez, supra*, 127 Cal.App.4th at p. 1251, italics omitted.)

Tripathi's evidence met those requirements.  Tripathi's declaration in support of summary judgment stated that he purchased the property for $1,220,100.00 and, at the time of the sale, had no knowledge of any dispute

11

regarding the foreclosure proceedings or the underlying loan.  His declaration also attached the Trustee's Deed Upon Sale, which recited compliance with the statutory notice requirements governing both the notice of default and the notice of sale.  Those recitals triggered the conclusive presumption afforded bona fide purchasers under section 2924, subdivision (c).

The burden therefore shifted to Tesconi to produce evidence of an irregularity in the foreclosure proceedings.  (See *Melendrez*, *supra*, 127 Cal.App.4th at p. 1258.)  Because he filed no opposition, he produced no such evidence.

Nor do Tesconi's appellate arguments demonstrate otherwise.  Tesconi first contends Tripathi purchased the property for substantially less than its market value.  But inadequacy of price alone neither defeats bona fide purchaser status nor establishes an irregularity in the foreclosure sale. (*Melendrez*, *supra*, 127 Cal.App.4th at p. 1251 ["The first element [of being a bona fide purchaser] does not require that the buyer's consideration be the fair market value of the property"]; *Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at p. 105 [" 'The "mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale." ' "].)

Tesconi next argues the pending wrongful foreclosure action and recorded lis pendens precluded Tripathi from qualifying as a bona fide purchaser.  The undisputed evidence, however, establishes that Tripathi submitted the successful bid on April 2, 2024, before either the May 10, 2024 recording of the lis pendens or his June 7, 2024 addition as a defendant in the wrongful foreclosure action.

12

Once Tripathi submitted his winning bid, he could not simply rescind the offer. "[A] bid at a foreclosure sale constitutes . . . 'an irrevocable offer' to purchase the property for the amount of the bid." (*California Golf, L.C.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1071; Civ. Code, § 2924h, subd. (a); *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1237.) And, once the bid is accepted, the sale is complete. (§ 2924h, subd. (c); *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 699–701; *Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 4–5.) As explained in *Matson v. S.B.S. Trust Deed Network* (2020) 46 Cal.App.5th 33, 41, "[d]elivery of the trustee's deed . . . is a ministerial act after the sale has been completed by accepting the highest bid." Even though the purchaser in *Matson* attempted to reject the deed of trust and returned it to the trustee rather than recording it, the court concluded "these actions had no legal effect as the sale was completed upon acceptance of the final bid. Delivery of the deed by the trustee makes conclusive the presumption that the sale was properly conducted [citation], and recordation of the deed perfects the title." (*Ibid*.) Thus, at the time Tesconi recorded his lis pendens, the trustee's sale was complete and the statute provides no manner by which to abort the sale aside from a defect in the foreclosure process. (*Angell*, at p. 701.)

Moreover, there is no evidence Tripathi was aware of the lis pendens before recording the trustee's deed. While Tesconi recorded the lis pendens with a proof of service, Tripathi was never served with the document. Instead, the proof of service only reflects service to an unnamed "successful bidder" at the property address—which, at the time, was still in possession of Tesconi. Nor was Tripathi a party to the foreclosure action prior to recording the trustee's deed. Accordingly, those later events do not undermine his bona fide purchaser status.

### 2. Title Was Duly Perfected

Tripathi also had to establish that title was duly perfected before he served the operative three-day notice to quit. (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 479–480.) " 'Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt . . . [citation], which includes good record title.' " (*Id.* at p. 479, italics omitted.) In other words, "perfection of title requires that the instrument of conveyance (the trustee's deed) be recorded pursuant to Government Code section 27280." (*Ibid.*)

The evidence satisfies this requirement. The trustee conveyed to Tripathi a deed of sale for the subject property, which was recorded on May 24, 2024. Although the record does not establish whether the deed was recorded before or after an earlier notice to quit served that same day, Tripathi declared he served a second three-day notice to quit on May 30, 2024. Thus, Tripathi recorded the trustee's deed six days before the three-day notice to quit.

In response, Tesconi argues Tripathi failed to establish duly perfected title because the property remained subject to pending wrongful foreclosure litigation and a recorded lis pendens. As discussed, however, Tesconi forfeited that contention by failing to oppose the summary judgment motion.

### 3. Notice To Quit and Holdover

Finally, Tripathi was required to establish that he properly served a three-day notice to quit after title was recorded, and Tesconi remained in possession after expiration of the notice period. (Code Civ. Proc., §§ 1161a, subd. (b), 1162, subd. (a).)

14

Tripathi's declaration established both facts. He declared that on May 30, 2024, he served the notice to quit by posting it on the front door of the property and mailing a copy to Tesconi via first class mail. He further declared that Tesconi remained in possession after service of the notice and refused to surrender possession. Tesconi identifies no evidence creating a triable issue regarding either service of the notice or his continued possession.

In sum, Tripathi submitted undisputed evidence establishing each element of his unlawful detainer claim. Although Tesconi now advances several theories challenging the foreclosure sale and Tripathi's title, those arguments were never presented to the trial court in opposition to summary judgment and therefore do not create a triable issue of material fact on appeal. The trial court properly granted summary judgment.

## III.  Order Denying Motion To Stay

Tesconi also contends the trial court should have stayed the unlawful detainer action pending resolution of his separate wrongful foreclosure action because that action challenged Tripathi's title. We disagree.

An unlawful detainer action following a trustee's sale under Code of Civil Procedure section 1161a permits only a " 'narrow and sharply focused examination of title' " directed to the procedural validity of the foreclosure sale. (*Asuncion v. Superior Court* (1980) 108 Cal.App.3d 141, 144.) Accordingly, a purchaser at a trustee's sale, who then becomes the plaintiff in an unlawful detainer action, need establish only that the sale complied with the applicable statutory requirements and that title was duly perfected. (*Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465 (*Seibert*).) The occupant may challenge only that limited aspect of title; broader disputes concerning the validity of the underlying loan, deed of trust,

15

or other defects in title fall outside the scope of the summary unlawful detainer proceeding. (*Ibid*.)

For that reason, the existence of a separate action involving title does not, by itself, require a stay of an unlawful detainer proceeding. Rather, whether a stay is appropriate depends upon the nature of the claims asserted in the companion action. In *Old National Financial Services, Inc. v. Seibert, supra*, 194 Cal.App.3d 460, for example, the trial court denied the defendant's request to stay the unlawful detainer action because of a pending fraud complaint he filed against the plaintiff related to certain loans. (*Id.* at p. 465.) This court affirmed, explaining "that where the plaintiff in the unlawful detainer action is the purchaser at a trustee's sale, he or she 'need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title. Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment.'" (*Ibid*., italics omitted.) Because the issues raised in the other complaint did not relate to whether the trustee's sale complied with section 2924 or whether title was perfected, there was no basis to stay the unlawful detainer. (*Seibert*, at p. 465.)

Conversely, where the separate action challenges the procedural validity of the trustee's sale itself, a stay may be warranted because those issues overlap with the limited title inquiry permitted under Code of Civil Procedure section 1161a. In *Mehr v. Superior Court* (1983) 139 Cal.App.3d 1044 (*Mehr*), an individual purchased the subject property at a trustee's sale and successfully obtained a judgment for possession following an unlawful detainer proceeding. (*Id.* at p. 1047.) The Mehrs sought a stay of execution

16

pending their appeal, which the trial court denied. (*Id*. at pp. 1047–1048.) On appeal, the court raised concerns with issues of title being litigated in the unlawful detainer matter. (*Id*. at p. 1050.) Specifically, the Mehrs filed a separate lawsuit claiming the "trustee's sale was void and of no effect" because the trustee failed to comply with certain statutory requirements for the sale, and also raised this issue as an affirmative defense to the unlawful detainer. (*Ibid*.) Accordingly, the appellate court concluded the Mehrs' motion for stay of execution pending appeal should be granted. (*Ibid*.)

Likewise, where the competing claims of ownership present complex title disputes that cannot fairly be resolved within the summary procedures governing unlawful detainer, the trial court may stay or consolidate the actions. (*Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 371, 393 (*Martin-Bragg*) [claims of ownership between former domestic partners were tied to complex commercial transactions involving the property]; *Asuncion v. Superior Court*, *supra*, 108 Cal.App.3d at p. 144 [alleging financial company's claim of ownership arose from a loan that was usurious, fraudulent, and in violation of state and federal laws].)

The present dispute is more analogous to *Seibert* than to *Mehr* or *Martin-Bragg*. Tesconi's wrongful foreclosure action principally alleges misconduct by DRV in servicing the loan. Among other things, it alleges that Tesconi executed loan documents while impaired by medical treatment, that DRV improperly advanced funds, charged unlawful interest, acted in bad faith to prevent repayment of the loan, and otherwise engaged in wrongful lending practices. Although the complaint also alleges the trustee's sale should have been postponed and speculates that the property may have been sold to insiders because of the purchase price, it does not allege procedural defects in the trustee's sale itself or challenge Tripathi's acquisition of title in

17

a manner relevant to the limited inquiry permitted under Code of Civil Procedure section 1161a.  And the unlawful detainer action only alleged a right to title based on Tripathi's purchase at the trustee's sale, which Tesconi has not procedurally challenged.

Accordingly, as in *Seibert*, the issues presented in the wrongful foreclosure action do not overlap with those properly litigated in the unlawful detainer proceeding.  Unlike *Mehr* or *Martin-Bragg*, this case does not involve unresolved procedural challenges to the foreclosure sale or complex competing claims of ownership requiring adjudication outside the summary unlawful detainer process.  The trial court therefore acted within its discretion in declining to stay the unlawful detainer action pending resolution of the separate lawsuit.

### DISPOSITION

The judgment is affirmed.  Plaintiff may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


PETROU, J.

WE CONCUR:


TUCHER, P. J.

FUJISAKI, J.




A172456 / *Tripathi v. Tesconi*

18